BWIT FIFTY-FIFTH STREET, INC. d/b/a THE LEXINGTON GROUP, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
BWIT Fifty-Fifth Street, Inc. v. Commissioner
Docket No. 43158-85.
United States Tax Court
T.C. Memo 1987-516; 1987 Tax Ct. Memo LEXIS 512; 54 T.C.M. (CCH) 858; T.C.M. (RIA) 87516; October 1, 1987. *512 Richard E. Thigpen, Jr. and Richard M. Thigpen, for the petitioner. Frank D. Armstrong, Jr., for the respondent. KORNER
MEMORANDUM OPINION KORNER, Judge: In his notice of deficiency respondent determined deficiencies in petitioner's Federal income tax as follows: Year Ended
July 31
Deficiency
1980
$  9,643
1981
119,219
After concessions, the sole issue for decision is whether petitioner is entitled to deduct compensation expense accrued but not paid during the years at issue. This case was submitted for decision on fully stipulated facts pursuant to Rule 122. [1] The stipulation of facts and exhibits attached thereto are incorporated hereby by this reference. *513 BWIT Fifty-Fifth Street, Inc. ("petitioner"), is a corporation whose principal place of business was in Charlotte, North Carolina, when it filed its petition herein. Petitioner is successor-in-interest to The Lexington Group, Inc. ("The Lexington Group"), a North Carolina Corporation. The Lexington Group was an accrual basis taxpayer with a July 31 fiscal year end. It filed Federal corporate income tax returns, Forms 1120, for both of the taxable years at issue. The Lexington Group was incorporated on April 25, 1979, for the purpose of developing, renting, and selling real estate. During the taxable years at issue, it was involved in the acquisition of existing apartment complexes and the conversion of the apartments into condominiums for resale and rental. The Lexington Group was controlled by three individuals -- John M. Parker, James R. Nisbet, and W. B. Simons -- during the years at issue. Parker, Nisbet, and Simons together owned 100 percent of The Lexington Group's stock, served as its principal officers, and together with Thurman D. Nail, made up its board of directors. [2] Parker, Simons, and Nisbet met almost daily during the taxable year at issue to discuss The Lexington *514 Group's business. At a special meeting of The Lexington Group's board of directors held on May 23, 1979, the salaries of Parker, Nisbet, and Simons were set at $ 2,500 a month each. It was agreed that, due to cash flow problems The Lexington Group was encountering, only Parker's salary would be paid currently, and the others would accrue. The board of directors did not establish at the meeting when the accrued salaries were to be paid. The board of directors met again on December 31, 1979. At that meeting, a resolution was passed that "all salaries and bonuses accured [sic] at time of death will be paid in full to the deceased stockholder's estate." During the year ended July 31, 1980, Parker, Simons, and Nisbet each received the following salary payments from The Lexington Group: Payment
Parker
$ 30,900
Simons
30,000
Nisbet
30,000
On July 31, 1980, the last day of The Lexington Group's fiscal year, letters were sent by Nail on behalf of The Lexington Group to Parker, Simons, and Nisbet. The letters stated that *515 the salaries of Parker, Simons, and Nisbet for the year ended July 31, 1980, had been set at $ 55,900 each; that they had been paid $ 30,900, $ 30,000, and $ 30,000, respectively, of their $ 55,900 salaries; and that the balance "is being accrued on the company's books as of July 31, 1980, and this amount is owed to you by the company as of this date." The letters stated further that "this accrued salary will be paid to you by the company when it's [sic] financial position so permits." The Lexington Group accrued the unpaid salaries on its books. During the year ended July 31, 1981, Parker, Simons, and Nisbet each received the following salary payments from The Lexington Group: Payment
Parker
$ 34,500
Simons
30,000
Nisbet
30,000
On July 31, 1981, the last day of The Lexington Group's fiscal year, letters were sent by Nail on behalf of The Lexington Group to Parker, Simons, and Nisbet. The letters stated that the salaries of Parker, Simons, and Nisbet for the year ended July 31, 1981, had been set at $ 109,500 each; that they had been paid $ 34,500, $ 30,000, and $ 30,000, respectively, of their $ 109,500 salaries; and that the balance "is being accrued *516 on the company's books as of July 31, 1981." The letters stated further that the total of the amounts accrued for the years ended July 31, 1980 and 1981 "is owed to you by the company as of July 31, 1981," and that the accrued salaries would be paid to the three "by the company when its financial position so permits." The unpaid salaries for fiscal year 1981, which amounted to $ 75,000 for Parker and $ 79,500 each for Simons and Nisbet, were accrued on The Lexington Group's books for the taxable year ended July 31, 1981. In summary, for the years ended July 31, 1980 and 1981, The Lexington Group deducted the following amount of salaries which were accrued and unpaid at the end of each fiscal year: Salary Accrued
Officer
1980
1981
Total
Parker
$ 25,000
$ 75,000  $ 100,000
Nisbet
25,900
79,500  105,400
Simons
25,900
79,500  105,400
Total
$ 76,800
$234,000  $ 310,800
From March 16, 1982 through July 1, 1982, The Lexington Group paid $ 151,800 of the accrued salaries set forth above. On July 7, 1982, The Lexington Group's Board of directors, which then consisted of Parker, Nisbett, and Simons, by a "Consent to Action *517 Without Meeting" formally ratified and approved the payment of the accrued compensation at issue. Parker, Simons, and Nisbet, who are cash basis taxpayers, reported only the income actually paid to them by petitioner during the years at issue. They believed at all times, however, that the total compensation due them for each year included the accrued but unpaid salaries. They further believed as of the end of both fiscal years at issue that The Lexington Group was obligated to pay them the amounts accrued. On its Federal corporate income tax returns for the taxable years at issue, The Lexington Group deducted the amounts that it had accrued as compensation expense for Parker, Simons, and Nisbet, as well as the amounts that it had actually paid them. Respondent audited the returns and determined that The Lexington Group was not entitled to deduct the accrued but unpaid compensation. The sole issue for decision is whether petitioner is entitled to deduct the compensation it accrued, but did not pay, during the years at issue. [3] Respondent argues that petitioner is not entitled to deduct the accrued compensation at issue because petitioner's liability to pay the accrued compensation *518 was subject to two contingencies: (1) cash becoming available to pay the accruals, and (2) payment of the accruals being authorized by petitioner's board of directors. Petitioner's position is that it may deduct the accrued compensation because its liability for the accrued compensation was established during the years at issue, and only the time of payment of the compensation was contingent. On these facts, we agree with respondent. *519 Under the accrual method of accounting utilized by petitioner, an expense is deductible in the taxable year in which all events have occurred that determine the fact of the taxpayer's liability and the amount thereof can be determined with reasonable accuracy. [4]United States v. Anderson,269 U.S. 422, 441 (1926); sec. 1.446-1(c)(1)(ii), Income Tax Regs.
In order to be accruable, a liability must, inter alia, not be contingent on a future event. United States v. Hughes Properties,476 U.S. 593, 596 (1986); Putoma Corp. v. Commissioner,66 T.C. 652, 660 (1976), affd. 601 F.2d 734 (5th Cir. 1979). A compensation expense is accordingly not accruable if the payment of the compensation is conditioned on an improvement of the taxpayer's financial condition. Putoma Corp. v. Commissioner,66 T.C. at 661; *520 Field & Start, Inc. v. Commissioner,17 B.T.A. 1206, 1212 (1929), affd. per curiam 44 F.2d 1014 (2d Cir. 1930), cert. denied 283 U.S. 826 (1931). In this case, the evidence establishes that petitioner's payment of the accrued compensation was contingent on an improvement in its financial condition. The minutes of the board of directors meeting held on May 23, 1979, indicated that petitioner was experiencing cash flow problems, and the letters informing the officers of their compensation state that the accrued compensation was not to be paid until petitioner's "financial position so permits." [5]
Petitioner cites a number of cases, most prominently Lawyer's Title Guaranty Fund v. United States,508 F.2d 1, 6 (5th Cir. 1975); *521 Sartin v. United States,5 Cl. Ct. 172, 177 (1984); and Transcalifornia Oil Co. v. Commissioner,37 B.T.A. 119, 127 (1938), in support of his position that the salaries at issue were properly accruable. We have reviewed the cases, and find them to be inapposite. The cases support the proposition that, in certain circumstances, an expense to be paid at a future date is accruable when it becomes certain that a taxpayer is liable to pay it, even if a condition may occur subsequent to the time liability for payment accrues which would relieve the taxpayer of liability to make payment. In this case, we have concluded that petitioner's financial position was required to improve as a condition precedent to being required to pay the compensation. During the years at issue, that condition precedent was not certain to occur. In these circumstances, we hold that petitioner is not entitled to deduct the accrued compensation at issue. [6]
*522 Decision will be entered for respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
2. Parker was The Lexington Group's president, Simons was vice-president, Nisbet was secretary, and Nail was assistant-secretary. ↩
3. One of the grounds on which respondent disallowed the deduction of the accrued but unpaid compensation was that it resulted in excessive compensation to Parker, Simons, and Nisbet. The parties agree that if this Court determines that the compensation was properly accrued, petitioner is entitled to deductions for officers' compensation as follows: Officer
FYE 7/31/80
FYE 7/31/81
Parker
$ 55,900  $ 109,500  Simons
41,925  82,125  Nisbet
41,925  82,125  Nail
6,000  6,000  Total
$ 145,750  $ 279,750  The above amounts represent $ 48,850 and $ 1179,247 more for the respective fiscal years than the amounts allowed by respondent in his notice of deficiency. ↩
4. The parties agree that the amount of the accrued compensation was determinable with reasonable accuracy during the years at issue. ↩
5. Although a board resolution stated that salaries accrued at the time of a stockholder's death would be paid to the shareholder's estate, we do not view the resolution as changing the basic condition that the salaries would not be paid until petitioner's financial condition improved. We view the resolution simply as establishing that, even after a shareholder's death, his accrued compensation would be paid to his estate only if petitioner's financial condition permitted. ↩
6. As we have held that petitioner is not entitled not accrue the compensation at issue based on the fact that petitioner was liable to pay it only if its financial position improved,, we need not reach respondent's alternate position that petitioner is not entitled to accrue the compensation on the ground that payment of the compensation had not been authorized by petitioner's board of directors. Nor do we reach the additional amounts conceded by respondent, which were conditioned on the Court holding that any accrued amounts were deductible under the present facts. See note 3, supra.↩